Full flight today of six cases. We'll probably take a break after the third oral argument. Sitting today with me is Judge Murphy from Utah, Judge Carson from New Mexico. Let's go ahead and get started with 18-3240, Kientz versus the Social Security Administration, Mr. Moore. Good morning, Your Honors. It's my pleasure to be here today on behalf of Mr. Kientz. I think what we have in this case is kind of a first class bait and switch, unfortunately, for Mr. Kientz and all dual status technicians. In 1968, Congress created or passed the National Guard Technicians Act, which created this, what they call a civilian employee that are dual status technicians. They serve in a military support role. They help train. They help maintain and repair supplies used by the active duty. And it basically federalized these technicians that were prior to this employees of the state government. It brought them into a uniform system of benefits and uniform benefits as well. Requirements to be a dual status technicians were to be a member of the National Guard for the component that they worked with. They had to hold the military grade specified by the Secretary of the Army or Air Force who designated the Adjutant General, a military position, as their employer. They had to meet military security standards. They had to wear a military uniform. They had to maintain physical fitness standards for the military. And in kind of an odd little situation, they had to maintain hygiene, hair, and facial issues as well. They couldn't grow a full beard like myself here today, like Judge Murphy. That was one of the first cases, actually, in 1979 was in the US District Court here in Colorado where a gentleman was working in his, quote, Monday through Friday dual status technician role, wanted to grow facial hair and wanted to grow his hair long. And that court decided that the position was too military in nature, that the military had a right to discipline him and terminate him eventually as a result of him wanting to grow facial hair during his Monday through Friday job before he got to the guard classification. If you could just kind of refresh me on Mr. Keitz's, what was his Monday through Friday job? I'm not sure exactly what he did. In the Peterson case, they worked on airplanes. They repaired airplanes and things of that nature. I would imagine that he did some of the similar stuff for the Army, repaired vehicles and maintained vehicles and maintained weapons and things like that. Was that in his role? Was he a civilian in that role? Congress specified that the dual status technicians were civilian employees. So this was his Monday through Friday job that he was doing that. And then he had a Saturday, Sunday job that was? That was the guard. That was the National Guard? That was the Army National Guard. And what did he do on weekends? Classic military? Yeah, the one weekend a month, I think it's two weeks in the summertime where they have to do military drills and things of that nature. They were also, of course, subject to being called to active duty, which actually happened to Mr. Kynes in 2005. As a member of the National Guard, he was called to active duty, which took him out of doing his dual status technician role during that two-month time frame. Who paid his salary for the Monday through Friday job? That's correct. Who paid his salary? I believe the, it must have been the federal government, similar to his National Guard position. He was a civil. Was he paid by the National Guard or by some other agency? By some other federal agency. Who paid him for his weekend work? The Secretary of the Army, I think, in this case, would have paid that. Well, the statute requires that the payment be based wholly on service as a member of the uniformed services. And explain to me why the Monday through Friday civilian work that's paid by a non-military entity is wholly on service as a member of the uniformed service. The exception specifically says wholly earned as a member of uniformed service. And everything about this position, including being denied basic civilian rights to file for Title VII complaints and Section 1983 complaints, every circuit court having occasion to review these dual status technicians has found their role in the Monday through Friday position to be so irreducibly military in nature that they can't separate the two. It has worked to the detriment of dual status technicians in every one of those civilian matters where they sought to bring a claim under the Civil Service Act, grieve their terminations, that they were termed so military in nature that they couldn't bring these basic claims that were available to other civilian technicians. Why did Congress use the word wholly in the payment based wholly on service? Well, it's our position that the wholly goes to the earned adjective, or verb rather, not the uniformed service. There's no question that he's a member of uniformed service. And even the appellee acknowledges that. Our argument is that his quote unquote Monday through Friday job is so military in nature that regardless of what Congress said, various other courts have found that to be kind of a defunct designation. It's kind of if it walks like a duck and talks like a duck and swims like a duck. I mean, under that logic, virtually anything that Mr. Kites did Monday through Friday would be wholly subsumed within military service, wouldn't it? Under what circumstances could he become a dual service technician? Under what circumstances could he become one? He had to be a member of the National Guard first and foremost. You're not a member of the National Guard. You're not getting a dual service technician. Let's assume the same facts we have here. Your argument is that his avionics repair job is subsumed within, is based wholly on service in the military. What job could he do that would not place him in the same category? Well, there are some dual status technicians that do not require membership in the National Guard component. OK, so every member of the National Guard that does what Mr. Kites does is excluded? I'm sorry, I don't understand the question. Every member of the National Guard, then, would be not considered a dual service technician? Unless they are employed as a dual status technician. If I'm just a National Guard member. Give me an example. I want you to clarify the statute for me. Well, if I work at 7-Eleven Monday through Friday, and then I'm a member of the National Guard, there's nothing military about that Monday through Friday position at 7-Eleven. It's not dependent upon my membership in the National Guard. I don't have to wear my military uniform when I'm at 7-Eleven. What makes his Monday through Friday job military? The military aspects of the job in itself. The fact that he has to wear a uniform, that he doesn't have the rights under the Civil Service Reform Act, he doesn't have the right to bring typical claims that civilian employees would be able to make that are non-dual status technicians, that could bring claims for discrimination and injuries at work, and disciplinary, and grieve their disciplinary actions in the Civil Service Act. They don't have those rights. And a number of courts across various circuits have found that the work they perform on Monday through can't separate the two. There are two on-point circuit cases, one from the 8th, one from the 11th, that go different directions. That's correct. What's the fatal flaw in the 11th Circuit? Well, I think a couple of things. First of all, I think the appellant in that case acknowledged that the commissioner's determination was entitled to Chevron deference. We're not acknowledging that here at all. In fact, I don't think it even has Skidmore deference. I think that the 11th Circuit also somehow finds that the legislative history is not helpful, but also finds the commissioner's reasoning somehow persuasive. And I think that gets to one of the issues that, one, do they have, does the commissioner have, a delegation of authority to interpret who is a member of a uniformed service? Because that's really what we're here to determine. And that definition of uniformed service that Congress decided to make part of this windfall elimination provision exception, that was specific language they pulled out of a different statute that the Social Security Administration then adopted into this provision. So I don't think they have any delegation of authority to define a uniformed service, because that's already defined by the statute. Second of all, these pronouncements, the acquiescence ruling that followed the Peterson case wasn't even adopted by the decision in the 11th Circuit. They found it was cursory and lacked convincing rationale. So they discounted that completely. The problem is that the administrative law judges are essentially compelled to rule against these dual status technicians outside the 8th Circuit because of that pronouncement, which the 11th Court found didn't even have good rationale to it. I don't understand, in looking at the Martin decision, how they can find that the legislative history is not helpful and seek to define basic terms like service and as, and they focus on this word wholly, ignoring the other 10 words in that provision. This is an 11-word provision. And the commissioner wants you to focus entirely on the wholly instead of earned as a member of the uniformed service. In the 8th Circuit, in that decision, they focused on the word as. And they said, well, it was performed by somebody who was uniformed service, but not as someone who was in a uniformed service. Now we're switching to a different word, wholly. Maybe the next time it's earned. You have to review these entire things in the entire context of the whole provision. Wholly earned as a member of a uniformed service. Uniformed service is defined if anybody they work is a reserve component. And not every job that a National Guard person does Monday through Friday would be covered under this section. It's the military aspects of this position which bring them under this provision, the opinion of us. You also have a situation where the most recent statute was in 1994 that brought about this uniformed service exception. This is a very specific exception, a very specific statute, that when the commissioner tries to argue about general things of preferring lower wage earned workers and things of that nature, this is a specific statute versus a very general one that they're trying to focus upon. In the Peterson case, they found that the work was based wholly on the service as a military technician. It said it was up to Congress to specify and change the language if they didn't like the ruling. And in the eight years since that decision came down, not one provision has been adopted by Congress to try and change that. However, from the time from 1983 to 2013, there have been over 40 bills or resolutions considered by Congress to either repeal or amend or replace the Windfall Elimination Provision because they realize that this reduction of 40% is completely arbitrary. That statute was passed in the first place relative to people who are moonlighting or had a very short time in covered employment. That's not what we have here. They've taken this one little provision and exploded it to apply to everybody they can possibly apply it to. They've also applied it to foreign nationals, by the way. If somebody comes in from Canada, earns a pension from Canada, and they also earn a pension from the United States, they've reduced their retirement benefits because of the pension earned in Canada because we didn't take Social Security taxes out of that pension. That's another thing that they're trying to do here. Does it matter that Mr. Kites receives two different pensions, a military pension and a civilian status pension? No, not in my opinion because he doesn't earn that civilian pension if he's not first a member of the National Guard. And it's not just that. It's all these other military requirements as well that are in there. Do we look at the job that he performed or do we look at the fact that he wore a uniform and was subject to some obligations of military discipline? I think they're kind of hand in hand. The job is essentially military in nature. He trains military people. He repairs military equipment. He administers military in a support role. And Congress recognized- His job is as an engineer, technician. That's correct. He could work on non-military aircraft. Yes, he could. That would not be military in nature. Correct. The point is that he didn't. He chose this job because our government went to them and we said, we need you people to work in roles that support the military. And for that purpose, we're going to provide uniform benefits and we're going to take care of you. And instead, they get kicked to the curb at every time they try to mention a civil claim that they otherwise would be entitled to, which I'm sure they didn't know when they took the job. And by the time they were retired, they're getting $200, $300, $400 less per month. And that was another nice little surprise at the end. So I'll reserve the balance of my time. Thank you. Thank you. Just a second. We have a follow-up question. You said in Martin, there was complete reliance upon Chevron. That's not the way I read Martin. Martin said it was Skidmore. In Martin's case, the appellant acknowledged that Chevron deference was appropriate. The court relied upon Skidmore's persuasive authority for their ruling, despite the fact that they found that legislative history wasn't particularly helpful in determining what the- Didn't it go beyond that? Didn't the court say that that was the best reading? Yes, which is the Skidmore standard. Didn't that just kind of water down any attempt to distinguish it because there was some type of deference, whether it's Chevron or Skidmore? Well, the Skidmore deference, obviously, is less. The question is, what kind of deference does it do under Skidmore in the first place? Here's my point. It sounds to me like they didn't need to have deference under either Skidmore or Chevron. The language the court used. I think they found Skidmore deference. It was the most persuasive reading, I believe, was that Martin court rule, which is the Skidmore standard. Thank you. All right, let's hear from the administration. You may please the court. Sush Misoni for the Commissioner of Social Security. Your honor is correct. There were two actual retirement pensions here. Mr. Kainz receives a military- he receives military retired pay. And that is for his wages earned when he was in the Navy, starting in 1972, and then picking up in 1978 when he joined the National Guard until he retired from the National Guard in 2007. So he gets the benefit of the uniformed services exception for that military retired pay, which means that it does not reduce his Social Security benefits, even though some of it was not covered employment. He also gets the civil service retirement system pension that's at issue here. That is based on his work as a dual status technician from 1978 to 2007, and also on 15 months in civilian civil service employment as, I believe it was called, an electronics mechanic. So those two things are the basis for his civil service pension. And he does not get the exception for that. And in that respect, he is in exactly the same position as every other member of the civil service who served when he did and was also in the National Guard on the weekends. He's treated exactly the same. So what he is arguing is that he should be treated differently because he views his job as a dual status technician as essentially military. But in fact, there are concrete and meaningful differences between the two jobs that go beyond the fact that he performed the dual status technician job during the work week. And he did his National Guard service on the weekends and his field training 15 days in the summer. The statute only requires service as a member of a uniformed service, i.e. the National Guard. Why doesn't he fall within that statutory language? So he is a member of the National Guard. But he isn't acting in his capacity as a member of the National Guard all the time. He's serving in his capacity as a member of the National Guard when he's doing his service, his active duty or his inactive duty training on the weekends or in the summer. Why does the statute require that he be acting in the capacity of a National Guard member? If we're going to look at the plain language, the provision reads that the uniformed services exception applies to a payment based wholly on service as a member of a uniformed service. So he is a member of a uniformed service. But when he worked as a dual status technician, he was not working as a member of a uniformed service. So here are some differences between those jobs. These are important differences that go beyond who pays his pension and who pays his wages. Although Your Honor is correct, his wages as a dual status technician were civil service wages, according to the GSA scale, paid by he was an employee of the Department of the Army and the United States by law. His National Guard wages were military wages. And they were paid out by the Kansas Army National Guard. That's the state entity using federal funds. But he had a state employer. And then two entirely separate retirement systems. So as a National Guard, so as a dual status technician, for instance, they're allowed to unionize. They can join a union. And they operate under a collective bargaining agreement. You can't do that in the National Guard. They get comp time if their hours are set by the secretary. And in this case, the Secretary of the Army. And if it's needed for them to work extra, they get comp time. The National Guard, you don't get comp time. You don't get comp time in the military. They can work. Was he a member of a union? Or did he receive comp time? Was he a member of a union? That's not in the record. I'm speaking generally to, but a lot of the dual status technicians are. Are you saying, though, that he was eligible? Is that your point? Yes. Dual status technicians can unionize. So not absolutely everything about being a dual status technician is subject to being bargained over. There are some cases that say, you can't bargain over the uniform requirement because that's part of the statute. But a whole lot of other things are. So the comp time, National Guard, if they need you when you're on active duty or inactive duty for training, they need you to work extra hours, they can work you 24-7. And they don't have to give you comp time. Personal injury, if you get injured on the job as a dual status technician, you get Federal Employee Compensation Act or workers' comp. You get injured on the job as a National Guard, they do a special type of military report. And the idea is to get you, I believe, eventually some type of military disability pay. The dual status technicians get an annual performance evaluation like other civil servants. There are so many meaningful, concrete differences between these two jobs. What about the cases that he referred to about the lack of protection to members of the military because of the military disciplinary hierarchy? Excuse me, Ryan. So the Ferris cases, the cases about intramilitary immunity, to the ones he's referring to, those are getting at a completely different question. They are about justiciability. Should the courts, can the courts, and should they consider these claims? Usually they are state torts or Federal Tort Claims Act or discrimination suits, cases that service members bring against their superiors or their colleagues in some cases. And the question is, should the courts address these cases which implicate very difficult questions and concerns about military discipline and military structure? And those cases have nothing to say to the question of how the Social Security Administration should account for particular types of employment in awarding retirement benefits. It is a completely different question. Even the tests are different. Incident to service, incident to military service is the test under the Ferris Doctrine. But here, the statute is very clear, based wholly on service as a member of a uniformed services. It's a different question. So the plaintiff seems to be suggesting that when he was working as a dual status technician, he was simultaneously working in his capacity as a member of a uniformed service. But we know that that is not actually possible because the Supreme Court has said in Perpich versus Department of Defense that someone who serves in the National Guard has three hats, the civilian hat, the state militia National Guard hat, and then in this case, it would be the active Army hat when you're activated, called to active duty. And the Supreme Court said, you can only wear one hat at a time, meaning if you are called to active duty and you are active Army, you are not acting in your capacity as a National Guard. And what that means is, if you are working in your capacity as National Guard, you are not working in your capacity as a civilian. And this is consistent with the statute, which says that if any civil servant, not just Mr. Kynes, wants to do his summer 15 days of training during the time when he would normally be working his nine to five job, he has to take special leave under 5 USC. You cannot do both of those jobs at the exact same moment. The statutes aren't set up that way. You can't get military pay for doing your civilian work, and you can't get civilian pay for doing your military work. In this case, as plaintiff's counsel mentioned, Congress created this position in order to make it more attractive. To make the dual status technician position a civilian civil service position that supports a National Guard unit. But the way it made it, the central way it made those positions attractive to people was by giving people the availability of the civil service retirement system because that has a very generous pension. Why does it have a generous pension? Because people in that system did not pay into social security. And therefore the pension was designed to replace the private sector pension and social security. You got something that approximated both. So Mr. Kynes, when he took the dual status technician position, he didn't pay into social security. And the pension that he gets is very generous for that reason. But like all other civil servants who worked for HUD or DOJ and were in the National Guard on the weekend, some of whom were also deployed, they are in the exact same position. They are all, they do not get the benefit of the uniformed services exception. And their civil service pension, not their retirement pension, not their military retired pay, but their civil service retirement system pension does operate to reduce their social security benefits. And that's exactly the way Congress wanted this to operate. I'm happy to- What's the, the Eighth Circuit disagrees with you. What's the flaw in its reasoning? The Eighth Circuit's reasoning was as follows. That Mr. Peterson was a member of a uniformed service, that he worked in the National Guard, and therefore he was working as a member of a uniformed service. End of reasoning. They did not look at whether he was working, like what wholly meant. Was he working wholly in that capacity? They didn't look at as, was he working in his capacity as a uniformed member? They relied very heavily on the fact that he wore the uniform and had to be a member of the National Guard. However, those are conditions of employment. They are prerequisites for getting the job. They're not the job itself. What did he get paid for? What did he get his civilian wages for, for working as an electronics mechanic? Doesn't that make him different than employees at DOJ or HUD where National Guard service is not a condition of employment? Well, Your Honor, the dual status technician position is supposed to be unusual. It was created to be a hybrid. Congress wanted this to be not wholly civilian and not wholly military. So it is a unique position, but it is within the civil service. And the whole idea, as I said, was to give people this special pension, which comes from the civil service retirement system. So when one does, as the Eighth Circuit did, when one says, well, it's all part of one system, it's all part of the military, that negates what Congress was trying to do to give them this special benefit. It was the position was created for that reason. So we can't now say, well, it's really military. It's not really military. The whole point of it is to get this, to put them in the civil service, but to do some military things. It's a job that has military aspects, and it's intended to. You're not relying on Chevron deference, are you? No, Your Honor, we argued in our brief that the commissioner's interpretation should get Skidmore deference, Your Honor. And that is what the Martin Court found. I'd like to clarify any other questions that the court might have. It's a difficult statute. And if the court has no further questions. No further questions, counsel. Thank you for your argument. We have some rebuttal time. Thank you. We ask the court to affirm the decision of the district court. Could you give him a minute 30? Once, hold on. That's all right. Thank you. Your Honor, some of the comments that Ms. Swaney made just are simply not accurate. While Mr. Kintz could join the union, he couldn't take advantage of any of the grievance process that would normally be his right to do under as a civilian employee. That was found in New Jersey versus the FLRA in 1982. It's not cited in my brief, but it's 677 Fed 2nd 276. In that case, the employee sought to bring the guard into the grievance process, and they told him, no, you didn't get that right. Could he join a union? I think he could, but his rights are extremely limited. He wouldn't get the rights that a typical union member would get by doing that, just like his other civilian rights and civil rights were documented that. The statute itself denotes that when he does the dual status technician job, he is both an employee of the federal government and of the secretary of the component that he works for. That's in the statute, it's clear. Thank you. Mr. Moore, you still have 30 seconds, even though it doesn't register. Oh, okay, thank you. I have a question. Yes. What is wrong with the analysis of Peterson as given by Ms. Swaney? I don't think there's anything wrong with it. I think it's a, it reflects. She told us why it was unpersuasive. She, well, we have a difference of opinion. Respond to that. I think what the Peterson court does is take the most direct reproach, which was that these 11 words mean something. They're the most recent pronouncement by Congress. There's a specific exception for uniformed service members and the military aspect of the work that Peterson did makes him military in nature, not civilian in nature, despite this general pronouncement by Congress 50 years ago that just about every circuit court has since discounted and they don't want to, they want you to ignore all these various Stockton cases, but they mean something. These are very real rights that civilian employees have access to that these dual citizens do not have because of the military aspect of the work that they perform. That's a huge thing that I think this court has to take into consideration when determining if they're military in nature or civilian in nature, regardless of any pronouncement by Congress. Thank you, Mr. Counsel. Thank you, Your Honor. The arguments, counsel, are excused and the case shall be submitted.